## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **AWP, INC.,** | Case No.: |
| **Plaintiff,** | |
| **v.** | |
| **SOUTHEASTERN TRAFFIC SUPPLY, INC., STEPHEN KOVACH, ROBERT PARRISH, and ROSS SMITH,** | |
| **Defendants.** | |

## COMPLAINT

Plaintiff, AWP, Inc., for its Complaint against Defendants Southeastern

Traffic Supply, Inc., Stephen Kovach, Robert Parrish and Ross Smith (collectively,

"Defendants") alleges as follows:

### NATURE OF THE ACTION

1.     This is an action for damages and injunctive relief to recover for

Defendants' unlawful acts, including violation of the Computer Fraud and Abuse

Act, breach of contract, tortious interference with contractual relations, tortious

interference with business relations, misappropriation of trade secrets, willful and

malicious misappropriation of trade secrets, breach of fiduciary duties, tortious

interference with a fiduciary duty and civil conspiracy.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because the Computer Fraud and Abuse Act claim arises under the laws of the United States, and has supplemental jurisdiction under 28 U.S.C. § 1367(a) over AWP's claims under Georgia law.  This Court also has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1332(a), because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the controversy is between citizens of different States.

3.      Personal jurisdiction is proper because Southeastern is incorporated in and has its principal place of business in Georgia; Smith, Kovach and Parrish reside in Georgia; and the unlawful acts giving rise to the causes of action at issue occurred in Georgia.

4.      Venue is proper in this District under 28 U.S.C. § 1391, as Southeastern has its principal place of business in this District, and all remaining Defendants reside within the District and the state of Georgia.  Venue also is proper because a substantial part of the events or omissions giving rise to the causes of action at issue occurred and are occurring in this District.

## THE PARTIES

5.      AWP, Inc. ("AWP") is an Ohio corporation with its principal place of business at 826 Overholt Road, Kent, Ohio 44240.

6.     Southeastern Traffic Supply, Inc. ("Southeastern") is a Georgia corporation with its principal place of business at 720 Fair Oaks Manor, N.W., Atlanta, Georgia 30327.

7.     Stephen Kovach ("Kovach") is an individual who, upon information and belief, resides in Lithia Springs, Georgia 30122.

8.     Robert Parrish ("Parrish") is an individual who, upon information and belief, resides in Cumming, Georgia 30041.

9.     Ross Smith ("Smith") is an individual who, upon information and belief, resides in Canton, Georgia 30115.

## FACTUAL BACKGROUND

### *AWP is a National Leader in Traffic Control Services*

10.     Established in 1992 in Akron, Ohio, AWP started as a small security company that offered traffic control services to local customers.  Nearly 25 years later, AWP is the largest comprehensive traffic control company in the United States with more than 2,500 employees and daily operations in 18 states.

11.     AWP offers traffic control services to nearly every major public utility from Michigan to New York and south to Florida.  AWP has more than 40 branch facilities across its territory.  Leading the way in traffic control and management, AWP provides municipalities, utilities and private contractors with a variety of

services including traffic control, special events, engineering and design, consulting, and safety and training.  It also provides equipment rental and sales.

12.     AWP markets its employees as one of its two "secrets to success" because they are the best trained safety workforce in the business.

13.     Over many years and through substantial time and effort, AWP developed confidential and proprietary trade secret information related to the services it provides including, but not limited to, strategic plans for developing and marketing its services, customer and prospective customer lists, customer information and preferences, inventory, pricing, profit margins, and employee compensation and benefits arrangements.  Such information is not generally available to those outside of AWP.

14.     AWP takes active steps and uses reasonable means to safeguard its confidential and proprietary trade secret information.  Such information is accessible only within the company by those having a legitimate business reason to use it.

15.     Because of the time, effort and resources that AWP has devoted to the creation and maintenance of its confidential and proprietary trade secret information, such information has independent economic value.  Its disclosure will cause AWP to lose a valuable competitive advantage over other companies in the industry.

16.     In consideration for their employment with AWP, certain employees also execute employment agreements whereby they covenant not to participate in any business that competes with AWP and not to solicit or hire away AWP employees under specified conditions.  Some of these covenants survive their termination of employment with AWP.

17.     In June of 2015, AWP became a portfolio company for the private equity firm The Riverside Company ("Riverside").

### Defendant Robert Parrish

18.     In 2009, AWP acquired the company U.S. Traffic Technologies, Inc. (USTT), which Parrish started in Georgia in 2002.

19.     After the acquisition of USTT, Parrish worked for AWP as the Vice President of Business Development with responsibilities for AWP's entire Southern Division.  Under Parrish's leadership, AWP expanded its territory into Virginia, North Carolina and Florida.  Parrish also advised AWP's Board of Directors and had responsibility for sales in AWP's Southern Division.

20.     In his role as Vice President of Business Development, Parrish helped develop and had detailed knowledge of AWP's confidential and proprietary trade secret information including, without limitation, its strategic plans for developing and marketing AWP's products and services, financial data, customer lists, customer information, pricing and employee compensation.  Parrish had material

access to all confidential and proprietary trade secret information relating to customers within AWP's Southern division in Georgia, Florida, North Carolina, South Carolina and Virginia.

21.     Parrish executed a Restrictive Covenant Agreement with AWP on May 14, 2015 ("Parrish Agreement," attached as **Exhibit A**) and an Amended and Restated Employment Agreement on June 5, 2015 ("Parrish Employment Agreement," attached as **Exhibit B**; collectively "the Parrish Agreements").

22.     Parrish also signed a June 5, 2015 Stockholders Agreement as part of Riverside's acquisition of AWP ("Stockholders Agreement," attached as **Exhibit C**).  Upon information and belief, Parrish received more than $15 million for his interest in AWP.

23.     Pursuant to section 7(a) of the Parrish Employment Agreement, Parrish acknowledged that he gained access to AWP's "trade secrets and other confidential information."  Parrish agreed not to disclose or use any of AWP's trade secrets or confidential information pursuant to section 7(d)(i) of the Parrish Employment Agreement.

24.     Parrish also agreed that he would keep confidential and not divulge or use any of AWP's confidential information pursuant to section 6.23 of the Stockholders Agreement.  Parrish further agreed that he would keep confidential

and not disclose or use any of AWP's confidential or proprietary information pursuant to section 1 of the Parrish Agreement.

25.     Pursuant to section 7(b) of the Parrish Employment Agreement, Parrish agreed that during his employment with AWP and for a period of two years thereafter, he would not compete with AWP, solicit AWP's customers or business, divert or entice AWP's customers or business away from AWP, or promote or assist any other person or entity that competes with AWP.  Parrish further agreed not to compete with AWP pursuant to section 3 of the Parrish Agreement.

26.     Parrish agreed not to solicit AWP's employees for a period of two years after termination of his employment with AWP pursuant to section 7(c) of the Parrish Employment Agreement.  Parrish further agreed not to solicit AWP employees pursuant to section 2 of the Parrish Agreement.

27.     Parrish voluntarily terminated his employment with AWP on September 1, 2015.

28.     AWP never relieved Parrish of his continuing obligations set forth in the Parrish Agreements and Stockholders Agreement.

***Defendant Ross Smith***

29.     Upon information and belief, Smith worked for USTT when it was acquired by AWP in 2009.  Smith continued his employment with AWP from 2009 through approximately November 21, 2015.  He was a Regional Manager and

responsible for all AWP operations and sales throughout North Carolina, South Carolina, Tennessee and Georgia.

30.    Smith worked primarily out of AWP's office located at 3151 Nifda Boulevard SE, Smyrna, Georgia 30080.

31.    AWP provided Smith with access to its computers and other electronic devices that contained AWP's confidential and proprietary trade secret information as part of his employment with AWP.  When Smith returned one of the electronic devices at the end of his employment, the device had been erased.

32.    In discharging his responsibilities, Smith accessed AWP's confidential and proprietary trade secret information including, without limitation, its strategic plans for developing and marketing AWP's products and services, financial data, customer lists, customer information, pricing and employee compensation.  Smith had material access to all confidential and proprietary trade secret information relating to all AWP customers in North Carolina, South Carolina and Georgia.

33.    Smith signed the Stockholders Agreement on June 5, 2015, agreeing that he would keep confidential and not divulge or use any of AWP's confidential information pursuant to section 6.23 of the Stockholders Agreement.   Upon information and belief, Smith received more than $800,000 for his interest in AWP.

34.     AWP never relieved Smith of his continuing obligations set forth in the Stockholders Agreement.

***Defendant Stephen Kovach***

35.     Kovach was employed by AWP from approximately May 24, 2010 through December 12, 2015.  He was a project manager and interacted with customers in the field on behalf of AWP.

36.     Kovach executed a Confidentiality, Non-Competition & Non-Solicitation Agreement with AWP on May 28, 2015 ("Kovach Agreement," attached as **Exhibit D**).

37.     Pursuant to section 1(a) of the Kovach Agreement, Kovach acknowledged that he would have access to confidential and proprietary trade secret information belonging to AWP.  He agreed that he would not use, divulge, or reveal such information pursuant to section 1(b) of the Kovach Agreement.

38.     Kovach agreed that he would not compete with AWP after termination of his employment with AWP pursuant to section 1(c) of the Kovach Agreement.

39.     Pursuant to section 1(d) of the Kovach Agreement, Kovach agreed that he would not solicit AWP employees after termination of his employment with AWP.

40.    Kovach agreed that he would not solicit AWP clients and customers after termination of his employment with AWP pursuant to section 1(e) of the Kovach Agreement.

41.    AWP never relieved Kovach of his obligations set forth in the Kovach Agreement.

42.    Upon information and belief, Kovach is working currently with or for Smith, Parrish and/or Southeastern.

**The Creation of Southeastern to Compete with AWP**

43.    Upon information and belief, Smith and Parrish decided to start their own competing business, Southeastern, while still employed at AWP.

44.    Upon information and belief, Smith, Parrish, and/or Southeastern hired Kovach with the goal of misappropriating AWP's confidential and proprietary trade secret information, in direct violation of the Parrish Agreements, the Kovach Agreement, the Stockholders Agreement and applicable state law.

45.    Parrish purchased property located at 4780 Dawsonville Highway, Gainesville Georgia (the "Gainesville Property") on March 4, 2015, while still employed at AWP.  Upon information and belief, Parrish purchased this property with the intent to use it for Southeastern.

46.    Upon information and belief, at least as early as March 12, 2015, Smith also intended to be part owner of the Gainesville Property.

47.     At least as early as March 2015, Parrish sent information about the Gainesville Property to Smith's AWP company email account.

48.     At least as early as September 2015, Smith used his AWP company email account to send AWP's confidential and proprietary trade secret information, including financial performance results, forecasts and other data, to Parrish's personal email account.  Smith continued to do so through at least November 2015, more than two months after Parrish's employment with AWP had terminated.

49.     Southeastern was incorporated in Georgia on November 12, 2015.

50.     Smith's employment with AWP terminated on November 21, 2015, and upon information and belief, Smith has continued his relationship with Southeastern since.

51.     Upon information and belief, since at least as early as November 2015, Southeastern offers traffic control, special event services, and equipment rental.

52.     Upon information and belief, Smith and Parrish discussed Smith's termination of employment with AWP.  On the day before Smith terminated his employment, he and Parrish spoke by phone at least five times for a total of more than 40 minutes.

53.     Upon information and belief, Parrish, Smith, and Kovach used AWP's confidential and proprietary trade secret information to help start Southeastern and to compete against AWP.

54.     Upon information and belief, Parrish, Smith and Kovach actively recruited AWP employees to work at Southeastern.  The Defendants have contacted at least two AWP employees, Chris Wood and Johnny Jones, and offered them employment at Southeastern.

55.     Upon information and belief, Kovach, Smith and Southeastern knew about the continuing contractual obligations that Parrish owed to AWP at the time that he was working for Southeastern.

56.     Upon information and belief, Parrish, Smith and Southeastern knew about the continuing contractual obligations that Kovach owed to AWP at the time that he was working for Southeastern.

57.     Upon information and belief, Kovach, Parrish and Southeastern knew about the continuing contractual obligations that Smith owed to AWP at the time that he was working for Southeastern.

58.     Upon information and belief, the Defendants misappropriated AWP's confidential and proprietary trade secret information and solicited AWP's employees as part of a planned and coordinated effort orchestrated by the

Defendants to harm AWP's business and bolster Southeastern's competing business.

59.     In view of the actual and imminent harm to AWP and its legitimate business interests resulting from Defendants' wrongful acts, AWP is engaged in an on-going investigation and needs expedited discovery to protect its trade secret and confidential information and other legitimate business interests.

***Southeastern Diverts Customers and Business from AWP***

60.     Since leaving AWP, Parrish, Smith and Kovach have directly or indirectly solicited, diverted, enticed, or taken away one or more of AWP's customers or potential customers with whom they had contact, involvement, or responsibility during their employment with AWP.  AWP has already lost business from the following customers: All(N)1 Security, Blount Construction Company, Plateau Excavation, and Troy Construction.

61.     On or about February 4, 2016, counsel for AWP demanded that Southeastern, Smith and Kovach cease and desist all wrongful activities, but Defendants continued their course of conduct.

62.     Southeastern provides the same types of products and services to those customers that AWP provided.  In late March of 2016, Southeastern provided traffic control services to All(N)1 Security at a job site approximately two miles down the street from AWP's Smyrna facility.

63.    Given the nature of the employment of Parrish, Smith and Kovach with AWP, the continued use and disclosure of AWP's confidential and proprietary trade secret information by the Defendants is inevitable and constitutes a continued threat of unauthorized use of AWP's confidential and proprietary trade secret information.

64.    The Defendants' wrongful conduct has caused and is continuing to cause substantial harm and damages to AWP.

65.    Defendants' actions have caused and continue to cause irreparable harm to AWP for which there is no adequate remedy at law, and for which AWP intends to seek preliminary and permanent injunctive relief.

66.    Defendants' actions constitute knowing, willful, wanton, malicious, oppressive, fraudulent and intentional misconduct or are so lacking in entire want of care which would raise the presumption of conscious indifference to consequences.

67.    Defendants have been stubbornly litigious, have acted in bad faith and have caused AWP unnecessary trouble and expense, thereby entitling AWP to recover its reasonable attorneys' fees and litigation expenses pursuant to O.C.G.A. § 13-6-11.

## COUNT I
### Violation of the Computer Fraud and Abuse Act, 18 U.S.C. §1030
### (Smith)

68.     AWP hereby incorporates by reference the allegations set forth in paragraphs 1 through 67 of the Complaint.

69.     AWP's computers and electronic devices were connected to the internet and affected interstate commerce.

70.     Smith had limited authority to access AWP's computers and electronic devices.

71.     Smith knowingly and intentionally accessed AWP's computers and electronic devices in a manner exceeding his authority, thereby obtaining AWP's confidential and proprietary trade secret information.

72.     Smith knowingly, intentionally and without authority deleted confidential and proprietary trade secret information from certain of AWP's computers and electronic devices and returned the erased items to AWP, causing AWP to lose such information.

73.     As a result of Smith's improper access to AWP's computers and electronic devices, AWP has suffered and continues to suffer damages in an amount that is not now precisely ascertainable, but exceeds the jurisdictional amount specified in the C.F.A.A. and will be established at trial.

## COUNT  II
### Breach of Contract
### (Parrish)

74.     AWP hereby incorporates by reference the allegations set forth in paragraphs 1 through 73 of the Complaint.

75.     The Parrish Agreements and the Stockholders Agreement are valid and enforceable contracts.

76.     AWP has fully performed its obligations under the Parrish Agreements and the Stockholders Agreement.

77.     On information and belief, Parrish breached his contractual obligations to AWP in at least the following ways: disclosing or using the confidential and proprietary trade secret information of AWP; soliciting, diverting or enticing away current or potential customers from AWP; soliciting, diverting or enticing away AWP employees; and working for, assisting or investing in a business that competes with AWP.

78.     The breaches committed by Parrish are material.

79.     Parrish's wrongful conduct is the direct and proximate cause of damages to AWP in an amount that is not now presently ascertainable and will be established at trial.

80.     Parrish will continue to breach his obligations to AWP and AWP will continue to be irreparably harmed thereby unless such activities are enjoined by this Court.

## COUNT III
### Breach of Contract
### (Kovach)

81.     AWP hereby incorporates by reference the allegations set forth in paragraphs 1 through 80 of the Complaint.

82.     The Kovach Agreement is a valid and enforceable contract.

83.     AWP has fully performed its obligations under the Kovach Agreement.

84.     On information and belief, Kovach breached his contractual obligations to AWP in at least the following ways: disclosing or using the confidential and proprietary trade secret information of AWP; soliciting, diverting or enticing away current or potential customers from AWP; soliciting, diverting or enticing away AWP employees; and working for, assisting or investing in a business that competes with AWP.

85.     The breaches committed by Kovach are material.

86.     Kovach's wrongful conduct is the direct and proximate cause of damages to AWP in an amount that is not now presently ascertainable and will be established at trial.

87.     Kovach will continue to breach his obligations to AWP and AWP will continue to be irreparably harmed thereby unless such activities are enjoined by this Court.

## COUNT IV
### Breach of Contract
### (Smith)

88.     AWP hereby incorporates by reference the allegations set forth in paragraphs 1 through 87 of the Complaint.

89.     The Stockholders Agreement is a valid and enforceable contract.

90.     AWP has fully performed its obligations under the Stockholders Agreement.

91.     Smith breached his contractual obligations to AWP by disclosing or using the confidential and proprietary trade secret information of AWP.

92.     The breaches committed by Smith are material.

93.     Smith's wrongful conduct is the direct and proximate cause of damages to AWP in an amount that is not now presently ascertainable and will be established at trial.

94.     Smith will continue to breach his obligations to AWP and AWP will continue to be irreparably harmed thereby unless such activities are enjoined by this Court.

## COUNT V
## Tortious Interference with Contractual Relations
## (Smith, Parrish, Southeastern)

95.     AWP hereby incorporates by reference the allegations set forth in paragraphs 1 through 94 of the Complaint.

96.     On information and belief, Smith, Parrish and Southeastern purposely and maliciously used or disclosed AWP's confidential and proprietary trade secret information and breached their fiduciary and contractual obligations to AWP with the intent to induce Kovach to breach his obligations pursuant to the Kovach Agreement.

97.     These wrongful actions by Smith, Parrish and Southeastern caused Kovach to breach his obligations pursuant to the Kovach Agreement.

98.     Smith, Parrish and Southeastern were not a party to the Kovach Agreement and had no privilege to interfere with it.

99.     Smith, Parrish and Southeastern's wrongful conduct is the direct and proximate cause of damages to AWP in an amount that is not now presently ascertainable and will be established at trial.

100.    Smith, Parrish and Southeastern will continue to tortiously interfere with Kovach's obligations to AWP and AWP will continue to be irreparably harmed thereby unless such activities are enjoined by this Court.

## COUNT VI
### Tortious Interference with Contractual Relations
### (Smith, Kovach, Southeastern)

101.   AWP hereby incorporates by reference the allegations set forth in paragraphs 1 through 100 of the Complaint.

102.   Upon information and belief, Smith, Kovach and Southeastern purposely and maliciously used or disclosed AWP's confidential and proprietary trade secret information and breached their fiduciary and contractual obligations to AWP with the intent to induce Parrish to breach his obligations pursuant to the Parrish Agreements and the Stockholders Agreement.

103.   These wrongful actions by Smith, Kovach and Southeastern caused Parrish to breach his obligations pursuant to the Parrish Agreements and Stockholders Agreement.

104.   Smith, Kovach and Southeastern were not a party to the Parrish Agreements and had no privilege to interfere with such agreements.

105.   Kovach and Southeastern were not a party to the Stockholders Agreement and had no privilege to interfere with it.

106.   Smith, Kovach and Southeastern's wrongful conduct is the direct and proximate cause of damages to AWP in an amount that is not now presently ascertainable and will be established at trial.

107.   Smith, Kovach and Southeastern will continue to tortiously interfere with Parrish's obligations to AWP and AWP will continue to be irreparably harmed thereby unless such activities are enjoined by this Court.

## COUNT VII
### Tortious Interference with Contractual Relations
### (Kovach, Parrish, Southeastern)

108.   AWP hereby incorporates by reference the allegations set forth in paragraphs 1 through 107 of the Complaint.

109.   Upon information and belief, Kovach, Parrish and Southeastern purposely and maliciously used or disclosed AWP's confidential and proprietary trade secret information and breached their fiduciary and contractual obligations to AWP with the intent to induce Smith to breach his obligations pursuant to the Stockholders Agreement.

110.   These wrongful actions by Kovach, Parrish and Southeastern caused Smith to breach his obligations pursuant to the Stockholders Agreement.

111.   Kovach and Southeastern were not a party to the Stockholders Agreement and had no privilege to interfere with such agreements.

112.   Parrish had no privilege to interfere with the Stockholders Agreement.

113.   Kovach, Parrish and Southeastern's wrongful conduct is the direct and proximate cause of damages to AWP in an amount that is not now presently ascertainable and will be established at trial.

114.   Kovach, Parrish and Southeastern will continue to tortiously interfere with Smith's obligations to AWP and AWP will continue to be irreparably harmed thereby unless such activities are enjoined by this Court.

## COUNT VIII
### Tortious Interference with Business Relations.
### (All Defendants)

115.   AWP hereby incorporates by reference the allegations set forth in paragraphs 1 through 114 of the Complaint

116.   Upon information and belief, Kovach, Parrish, Smith and Southeastern purposely and maliciously used or disclosed AWP's confidential and proprietary trade secret information and breached their fiduciary and contractual obligations to AWP with the intent to induce one or more of AWP's customers to cease doing business with AWP and transfer their business to Southeastern.

117.   Defendants' wrongful actions caused one or more of AWP's customers to end their relationship with AWP and instead commence business with Southeastern.

118.   Defendants' wrongful actions also caused one or more of AWP's customers to discontinue use of certain of AWP's services and instead obtain those services from Southeastern.

119.   Kovach, Smith, Parrish and Southeastern were not a party to AWP's customer agreements and had no privilege to interfere with such agreements.

120.   Kovach, Smith, Parrish and Southeastern's wrongful conduct is the direct and proximate cause of damages to AWP in an amount that is not now presently ascertainable and will be established at trial.

121.   Kovach, Smith, Parrish and Southeastern will continue to tortiously interfere with AWP's business relations and AWP will continue to be irreparably harmed thereby unless such activities are enjoined by this Court.

## COUNT IX
### Misappropriation of Trade Secrets, O.G.C.A. § 10-1-760 et seq.
### (All Defendants)

122.   AWP hereby incorporates by reference the allegations set forth in paragraphs 1 through 121 of the Complaint.

123.   Kovach, Parrish and Smith had access to and acquired confidential and proprietary information of AWP, and detailed knowledge of such information of AWP, that constitute trade secrets within the meaning of O.C.G.A. §10-1-769 et seq.

124.   Kovach, Parrish, Smith and Southeastern have misappropriated or are threatening to misappropriate trade secrets belonging to AWP in violation of O.C.G.A. §10-1-769 et seq.

125.   AWP has not given its consent to Kovach, Parrish, Smith or Southeastern to disclose or use its trade secrets.

126.   The information misappropriated or threatened to be misappropriated by Kovach, Parrish, Smith and Southeastern is not commonly available to the public.

127.   The information misappropriated or threatened to be misappropriated by Kovach, Parrish, Smith and Southeastern derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other person who can obtain economic value from its disclosure.

128.   The information misappropriated or threatened to be misappropriated by Kovach, Parrish, Smith and Southeastern is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

129.   Given the nature of the positions in which Parrish and Smith served for AWP and the information they obtained in such positions, it would be impossible for Parrish and Smith to serve in any position within Southeastern without misappropriating, disclosing or misusing valuable trade secrets belonging to AWP.

130.   Kovach, Parrish, Smith and Southeastern's misappropriation and threatened misappropriation have caused and threaten to continue causing AWP irreparable harm for which there is and would be no adequate remedy at law.

131.   Defendants will continue to misappropriate AWP's trade secrets and AWP will continue to be irreparably harmed thereby unless such activities are enjoined by this Court.

## COUNT X
### Willful and Malicious Misappropriation of Trade Secrets
### (Parrish, Smith)

132.   AWP hereby incorporates by reference the allegations set forth in paragraphs 1 through 131 of the Complaint.

133.   Parrish and Smith's misappropriation of AWP's trade secrets complained of above has been willful and malicious.

134.   Accordingly, and in addition to other relief, AWP is entitled to recover from Parrish and Smith exemplary damages, pursuant to O.C.G.A. §10-1-763(b), and reasonable attorneys' fees, pursuant to O.C.G.A. §10-1-764.

## COUNT XI
### Breach of Fiduciary Duty
### (Parrish, Smith)

135.   AWP hereby incorporates by reference the allegations set forth in paragraphs 1 through 134 of the Complaint.

136.   As a result of their respective roles as Vice President of Business Development and Regional Manager with AWP, both Parrish and Smith had fiduciary or confidential relationships with AWP.

137.   As a result of their fiduciary or confidential relationships with AWP, both Parrish and Smith owed AWP a duty to refrain from acting in any manner inconsistent with AWP's interests.

138.   As a result of their fiduciary or confidential duties to AWP, neither Parrish nor Smith were entitled to make a profit for themselves to the injury of AWP.

139.   On information and belief, Smith and Parrish breached their fiduciary duties arising from their employment relationships with AWP by acting in a manner contrary to AWP's interests and profiting for themselves and to the detriment of AWP.

140.   Smith and Parrish's wrongful conduct is the direct and proximate cause of damages to AWP in an amount that is not now presently ascertainable and will be established at trial, and AWP is entitled to recover such damages from Smith and Parrish, in addition to any amounts paid to Smith and Parrish as wages for the period in which Smith and Parrish engaged in acts in violation of their fiduciary duties.

141.   As a result of the consequences of their breaches of their fiduciary duties to AWP, AWP has been and will continue to be irreparably harmed thereby unless such activities are enjoined by this Court.

142.   AWP is also entitled to recover punitive damages from Smith and Parrish as a result of Smith and Parrish's actions which constitute willful misconduct, malice, fraud, wantonness, oppression, or are so lacking in entire want of care which would raise the presumption of conscious indifference to consequences.

## COUNT XII
### Tortious Interference with a Fiduciary Duty
### (Parrish)

143.   AWP hereby incorporates by reference the allegations set forth in paragraphs 1 through 142 of the Complaint.

144.   On information and belief, through improper action or wrongful conduct and without privilege, Parrish acted to procure a breach of Smith's fiduciary or confidential duties to AWP.

145.   On information and belief, and with knowledge that Smith had fiduciary or confidential duties to AWP, Parrish acted purposely and with malice and the intent to injure.

146.   On information and belief, Parrish's wrongful conduct procured a breach of Smith's fiduciary or confidential duties.

147.   Parrish's wrongful conduct is the direct and proximate cause of damages to AWP in an amount that is not now presently ascertainable and will be established at trial, and AWP is entitled to recover such damages from Parrish.

148.   As a result of the consequences of Parrish's tortious interference with Smith's fiduciary duty to AWP, AWP has been and will continue to be irreparably harmed thereby unless such activities are enjoined by this Court.

149.   AWP is also entitled to recover punitive damages from Parrish as a result of Parrish's actions which constitute willful misconduct, malice, fraud, wantonness, oppression, or are so lacking in entire want of care which would raise the presumption of conscious indifference to consequences.

**COUNT XIII**
**Tortious Interference with a Fiduciary Duty**
**(Smith)**

150.   AWP hereby incorporates by reference the allegations set forth in paragraphs 1 through 148 of the Complaint.

151.   On information and belief, through improper action or wrongful conduct and without privilege, Smith acted to procure a breach of Parrish's fiduciary or confidential duties to AWP.

152.   On information and belief, and with knowledge that Parrish had fiduciary or confidential duties to AWP, Smith acted purposely and with malice and the intent to injure.

153.   On information and belief, Smith's wrongful conduct procured a breach of Parrish's fiduciary or confidential duties.

154.   Smith's wrongful conduct is the direct and proximate cause of damages to AWP in an amount that is not now presently ascertainable and will be established at trial, and AWP is entitled to recover such damages from Smith.

155.   As a result of the consequences of Smith's tortious interference with Parrish's fiduciary duty to AWP, AWP has been and will continue to be irreparably harmed thereby unless such activities are enjoined by this Court.

156.   AWP is also entitled to recover punitive damages from Smith as a result of Smith's actions which constitute willful misconduct, malice, fraud, wantonness, oppression, or are so lacking in entire want of care which would raise the presumption of conscious indifference to consequences.

**COUNT XIV**
**Civil Conspiracy**
**(All Defendants)**

157.   AWP hereby incorporates by reference the allegations set forth in paragraphs 1 through 156 of the Complaint.

158.   The Defendants, acting in concert, engaged in conduct that was designed to and did result in the commission of any or all of the above-pled torts.

159.   Defendants' concerted action is the direct and proximate cause of damages to AWP in an amount that is not now presently ascertainable and will be established at trial, and AWP is entitled to recover such damages from Defendants.

160.   Kovach, Smith, Parrish and Southeastern will continue to engage in conduct as part of a civil conspiracy, and AWP will continue to be irreparably harmed thereby unless such activities are enjoined by this Court.

161.   AWP is also entitled to recover punitive damages from Defendants as a result of Defendant' actions which constitute willful misconduct, malice, fraud, wantonness, oppression, or are so lacking in entire want of care which would raise the presumption of conscious indifference to consequences.

162.   The defendants will continue to disclose and use the confidential and proprietary trade secret information of AWP and AWP will continue to be irreparably harmed thereby unless such activities are enjoined by this Court.

**WHEREFORE**, AWP demands for entry of judgment as follows:

A.     That this Court preliminarily and permanently enjoin further breaches or attempted breaches of the Parrish Agreements, Kovach Agreement and Stockholders Agreement prohibiting any disclosure or use in any manner by Parrish, Kovach, Smith or Southeastern of AWP's confidential and proprietary trade secret information;

B.     That this Court preliminarily and permanently enjoin the Defendants from in any manner, directly or indirectly, inducing or attempting to induce any

employee of AWP to quit or abandon his or her employment or for any customer to quit or abandon its relationship with AWP for any purpose;

      C.     That this Court preliminarily and permanently enjoin further acts or attempted acts of tortious interference with AWP's contracts or valid business expectancy by the Defendants;

      D.     That this Court preliminarily and permanently enjoin further acts of misappropriation by the Defendants, including enjoining Parrish and Smith from serving in Southeastern's operations based on the inevitable disclosure of AWP's intangible trade secrets which would result from such service;

      E.     That this Court preliminarily and permanently enjoin further breaches or attempted breaches of fiduciary duties owed to AWP or tortious interference therewith by the Defendants, including but not limited to acts resulting from the consequences of prior breaches or tortious interference;

      F.     That this Court order Defendants not to destroy any AWP documents or information in their possession, custody or control;

      G.     That this Court order the Defendants to provide a comprehensive description to AWP of all of AWP's confidential and proprietary trade secret information provided to Southeastern;

      H.     That this Court order Defendants to return to AWP any confidential and proprietary trade secret information, including without limitation, customer

lists, customer contacts, customer information, employee compensation information, and pricing information provided to or in the possession, custody, or control of any of the Defendants;

I.      That this Court order that an accounting be made for AWP's damages arising out of the Defendants' violation of the Computer Fraud and Abuse Act, breaches of contract, tortious interference with contractual relations, tortious interference with business relations, misappropriation of trade secrets, willful and malicious misappropriation of trade secrets, breach of fiduciary duties, tortious interference with a fiduciary duty and civil conspiracy;

J.      That judgment be entered for AWP against the Defendants for all compensatory and related damages, including but not limited to all pursuant to the accounting requested in subparagraph I above;

K.      That judgment be entered for AWP against the Defendants for punitive damages;

L.      That AWP be awarded all available statutory damages;

M.      That AWP be awarded all of the costs, attorneys' fees and litigation expenses it has incurred in connection with this action pursuant to the contractual provisions in the Parrish Agreements, Kovach Agreement, Stockholders Agreement and any other applicable law or statutes; and

N.      For such other and further relief that this Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby requests a trial by jury.

Dated: April 22, 2016

<u>*s/ Elaine R. Walsh*</u>
William B.B. Smith (Ga. Bar No. 664637)
Elaine R. Walsh (Ga. Bar No. 003480)
JONES DAY
1420 Peachtree Street, N.E. Suite 800
Atlanta, GA  30309-3053
(404) 521-3939/Telephone
(404) 581-8330/Facsimile
wsmith@jonesday.com
erogerswalsh@jonesday.com


Robert P. Ducatman*
Jeffrey Saks*
Candice M. Reder*
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114-1190
(216) 586-3939/Telephone
(216) 579-0212/Facsimile
rducatman@jonesday.com
jsaks@jonesday.com
creder@jonesday.com

*Motion for Admission Pro Hac Vice
forthcoming*

*Counsel for Plaintiff*